IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ULTRA STEAK, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| v. | )   CASE NO. 1:14-cv-01829 |
| | ) |
| PHILADELPHIA INDEMNITY | ) |
| INSURANCE COMPANY, | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

Plaintiff Ultra Steak, Inc. ("Ultra Steak"), by and through undersigned counsel, for its Complaint for Breach of Contract and Declaratory Judgment against Defendant Philadelphia Indemnity Insurance Company ("Philadelphia Insurance"), states as follows:

### Parties to Action

1. Ultra Steak is an Indiana corporation with its principal place of business in Anderson, Indiana.

2. Philadelphia Insurance is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania, and was, at all relevant times, licensed to conduct insurance business in Indiana.

### Jurisdiction and Venue

3. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332(a)(1) in that Ultra Steak and Philadelphia Insurance are citizens of different states and the amount in controversy in this civil action exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because (a) Philadelphia Insurance is considered to reside in this judicial district as it is subject to the

Court's personal jurisdiction with respect to this civil action and (b) because it sold and issued the insurance policy at issue to Ultra Steak in this judicial district.

## Introduction and Insurance Policy

5. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure to determine and resolve questions of actual controversy about the scope of insurance coverage under an insurance policy sold to Ultra Steak by Philadelphia Insurance.

6. Philadelphia Insurance sold a Private Company Protection Plus insurance policy to Ultra Steak effective December 3, 2010 through December 3, 2011 (the "Policy Period") under policy number PHSD580051 (the "Policy"). Exhibit A.

7. The Policy includes three separate lines of insurance coverage, to wit: (1) Director and Officers and Private Company Liability Insurance; (2) Employment Practices Liability Insurance ("EPLI"); and (3) Fiduciary Liability Insurance.

8. The EPLI line of coverage insures Ultra Steak against losses due to claims alleging wrongful acts arising from the employment process. The insuring agreement from the EPLI line of coverage in the Policy reads as follows:

> The **Underwriter** shall pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act**.

9. The claim against the insured must arise, and be reported to the insurer, during the same policy period. The declarations for the Policy provide, in pertinent part, the following "claims made" notice:

> **EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY THOSE CLAIMS FIRST MADE DURING THE**

**POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.**

10. However, when the insured becomes aware of circumstances that may subsequently give rise to a claim against it, and the insured provides written notice of such circumstances and the insured's reasons for anticipating such a claim, then any claim that is subsequently made against the insured will be considered made during the policy period within which such written notice was provided to the insurer. Part 6, Section IV, of the Policy (the "Notice and Claims Reporting Provision"), reads as follows:

> If during this **Policy Period** an **Insured** first becomes aware of any circumstances which may subsequently give rise to a **Claim** being made against any **Insured** for a specific alleged **Wrongful Act**, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the **Underwriter** of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to the **Wrongful Act**, dates and persons involved, then any **Claim** which is subsequently made against the **Insured** arising out of such **Wrongful Act** will be considered made during this **Policy Period**.

11. During the Policy Period, Ultra Steak first became aware of circumstances that it believed may give rise to a claim against it and, pursuant to the Notice and Claims Reporting Provision, Ultra Steak provided written notice of the same to Philadelphia Insurance.

12. During the Policy Period, and just as Ultra Steak feared, the circumstances it reported to Philadelphia Insurance gave rise to a claim against it.

13. Nevertheless, Philadelphia Insurance improperly denied coverage to Ultra Steak because of a putatively untimely notice.

14. Accordingly, in this action, Ultra Steak seeks damages for breach of contract and a declaration of the rights and obligations of the Parties under the Policy.

### The Ohio Civil Rights Commission Charge

15. On March 9, 2010, East Columbus Host, Inc. dba Texas Road House ("ECH") was named as the single and only Respondent in *Cynthia Rieser v. East Columbus Host, Inc. dba Texas Road House*, Charge No. COL 71 (37475) 03092010, under a charge of discrimination through the Ohio Civil Rights Commission (the "OCRC").

16. On March 10, 2010, the OCRC notified ECH that it had been named as a Respondent in *Cynthia Rieser v. East Columbus Host, Inc. dba Texas Road House*, Charge No. COL 71 (37475) 03092010 (the "OCRC Charge").

17. On April 19, 2010, the law firm Taft Stettinius & Hollister LLP ("Taft"), responded to the OCRC Charge on behalf of, and only on behalf of, ECH (the "April 19th Response").

18. In the April 19th Response, Burgan expressly states that "[o]ur firm represents East Columbus Host, LLC (the "Company") in this matter," and disputes the OCRC Charge.

19. Subsequent to the April 19th Response, the OCRC did not pursue the OCRC Charge further.

### The United States Equal Employment Opportunity Commission Charge

20. On July 20, 2010, ECH was named as the single and only Respondent in *Cynthia Rieser v. East Columbus Host, LLC dba Texas Road House*, Charge No. 22A-2010-02636, under a charge of discrimination through the United States Equal Employment Opportunity Commission (the "EEOC").

21. On October 7, 2010, the EEOC mailed a Request for Information (the "RFI") to ECH. The RFI expressly identifies ECH as the single and only Respondent in *Cynthia Rieser v.*

*East Columbus Host, LLC dba Texas Road House*, Charge No. 22A-2010-02636 (the "EEOC Charge").

22. On November 17, 2010, Taft, and on behalf of ECH, responded to the RFI expressly stating that the responses are those of, and only of, ECH (the "November 17th Response").

23. In the November 17th Response, ECH objects to the RFIs as, in part, overbroad and not reasonably calculated to result in information necessary to further the EEOC's investigation of the EEOC Charge.

24. On December 7, 2010, the EEOC replied to the November 17th Response, stating that ECH has failed to adequately respond to the RFI. The EEOC's December 7th letter identifies the matter as *Cynthia Rieser v. East Columbus Host, LLC dba Texas Road House*, Charge No. 22A-2010-02636 (the "EEOC's December 7th Letter").

25. On December 22, 2010, Taft responded to the EEOC's December 7th Letter with supplemental information expressly stating that the supplemental responses are those of, and only of, ECH.

26. On May 23, 2011, the EEOC notified ECH that the EEOC Charge had been reassigned to a new investigator. The EEOC's May 23rd letter identifies the matter as *Cynthia Rieser v. East Columbus Host, LLC dba Texas Road House*, Charge No. 22A-2010-02636.

27. The May 23rd notice from the EEOC to ECH also stated that "the above-referenced charge has been expanded to include bases/issues of race (Black) and national origin (Hispanic) with respect to job hiring, job assignments and segregation of jobs (class), and sexual harassment (class) during the period of January 1, 2007 to the present for all restaurants owned and operated by Ultra Steak, Inc., including all Texas Roadhouse restaurants."

28. Nevertheless, as of May 23, 2011, Ultra Steak was not a Respondent. Indeed, the May 23rd notice specifically stated that the "above-referenced charge of discrimination filed by Cynthia Rieser ("Charging Party") against your client, East Columbus Host, LLC dba Texas Roadhouse ("the Repondent"), has been reassigned for investigation to Ms. Nancy Hall, Lead Investigator."

### Ultra Steak's Notice of Claim to Philadelphia Insurance

29. ECH is a franchisee of Texas Roadhouse Development Corporation and operates a full-service Texas Roadhouse restaurant in Columbus, Ohio.

30. Ultra Steak is not a franchisee of Texas Roadhouse Development Corporation; rather, Ultra Steak is a management company that provides business administration services to franchisees of Texas Roadhouse Development Corporation, including ECH.

31. In view of the broad nature of the RFI and the fact that the EEOC's investigation would now include other restaurants with whom Ultra Steak had done business, Ultra Steak feared that it would become a target of the EEOC Charge. Therefore, on June 1, 2011, Ultra Steak notified Philadelphia Insurance of the EEOC Charge, pursuant to the Notice and Claims Reporting Provision.

32. Under the terms of the Notice and Claims Reporting Provision, the insured is instructed to provide written notice to the insurer of circumstances which may give rise to a claim against the insured—further, the insured must do so within the policy period in which it first becomes aware that such circumstances may give rise to a claim against it. Indeed, under the terms of the Notice and Claims Reporting Provision, the insured is instructed to provide the insurer with "the reasons for anticipating such a [c]laim."

33. As of June 1, 2011, Ultra Steak was not a Respondent in the OCRC Charge or the EEOC Charge.

### Charge against Ultra Steak

34. On June 27, 2011, the EEOC mailed a second RFI to ECH that, for the first time, identified Ultra Steak as a Respondent in the EEOC Charge, just as Ultra Steak anticipated. The RFI reads, in pertinent part, as follows:

> Unless noted otherwise, the term "Respondents" used herein refers to Respondents East Columbus Host, LLC (d/b/a Texas Roadhouse) and Ultra Steak, Inc.

### Philadelphia Insurance's Improper Denial of Coverage to Ultra Steak

35. Despite Ultra Steak's proper and timely notice to Philadelphia Insurance of the circumstances it believed would result in a claim asserted against it by the EEOC pursuant to the terms of the Notice and Claims Reporting Provision, Philadelphia Insurance has repeatedly and improperly denied coverage to Ultra Steak.

36. On September 24, 2014, the EEOC filed a civil lawsuit against Ultra Steak relating to the EEOC Charge (the "EEOC Civil Suit").

37. Ultra Steak agreed to waive service of the complaint in the EEOC Civil Suit on October 15, 2014, and notified Philadelphia Insurance of the EEOC Civil Suit on October 21, 2014.

### Count I – Breach of Contract

38. Ultra Steak incorporates by reference paragraphs 1 through 37 above as though fully set forth herein.

39. The Policy is a valid and enforceable contract.

40. The Policy was in effect at the time the EEOC added Ultra Steak to the EEOC Charge.

41. Ultra Steak timely notified Philadelphia Insurance of the circumstances it believed may result in a claim asserted against it by the EEOC and otherwise complied with all pertinent provisions of the Policy.

42. Philadelphia Insurance has wrongfully denied that Ultra Steak's losses are covered under the Policy and has wrongfully failed to reimburse Ultra Steak for its covered losses.

43. Philadelphia Insurance has breached its contract of insurance with Ultra Steak.

44. As a direct and proximate result of Philadelphia Insurance's breach of contract, Ultra Steak has suffered, and continues to suffer, damages. Philadelphia Insurance is liable to Ultra Steak for all such damages.

### Count II – Declaratory Judgment

45. Ultra Steak incorporates by reference paragraphs 1 through 44 above as though fully set forth herein.

46. Ultra Steak has sustained, and will continue to sustain, losses that are covered by the Policy. The insuring agreement in the EPLI section of the Policy obligates Philadelphia Insurance to insure Ultra Steak for these losses. Philadelphia Insurance has wrongfully denied coverage for Ultra Steak's losses.

47. Pursuant to 28 U.S.C. § 2201 *et seq.*, a case of actual controversy exists between Ultra Steak and Philadelphia Insurance as to their respective rights and obligations under the Policy.

48. Pursuant to 28 U.S.C. § 2201 *et seq.*, Ultra Steak seeks is entitled to a judgment declaring that Philadelphia Insurance is obligated to reimburse Ultra Steak for all losses arising out of the EEOC Charge and the EEOC Civil Suit up to policy limits.

WHEREFORE, Ultra Steak respectfully requests that the Court enter judgment in its favor and against Philadelphia Insurance on this Complaint that: (1) declares Philadelphia Insurance is obligated under the Policy to provide coverage to Ultra Steak for the claims asserted against it by the EEOC; (2) awards Ultra Steak its losses, costs, attorneys' fees, prejudgment interest, and all other appropriate relief.

Respectfully submitted,

*/s/ David L. Guevara*
Blake J. Burgan, Atty. No. 18350-49
David L. Guevara, Atty. No. 26388-49
Krysta K. Gumbiner, Atty. No. 31989-45
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Telephone: (317) 713-3500
Email: dguevara@taftlaw.com

*Counsel for Plaintiff Ultra Steak, Inc.*

2262083